

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| CERTAINTEED CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA") files this Complaint and alleges as follows:

### NATURE OF ACTION

1.      The United States brings this action for civil penalties under the Safe Drinking Water Act (the "SDWA"), 42 U.S.C. § 300g-3(b) and (g), against Defendant, CertainTeed Corporation ("CertainTeed"), for violations of the Act and certain implementing regulations, 40 C.F.R. §§ 141.400-141.405 ("the Ground Water Rule") at its Lake Charles Polymer Plant ("the Plant") in Calcasieu Parish, Louisiana, which has its own ground water-based drinking water system.

### JURISDICTION, VENUE, AND NOTICE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), and under 28 U.S.C. §§ 1331, 1345, and 1355.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395 because this is

the district in which the Defendant's headquarters and principal place of business are located.

3.     The United States Department of Justice has authority to bring this action on behalf of the Administrator of EPA ("Administrator") under 28 U.S.C. §§ 516 and 519.

**PARTIES**

4.     Plaintiff United States of America is acting at the request and on behalf of the Administrator.

5.     Defendant CertainTeed is incorporated under the laws of the State of Delaware, and has its principal place of business in Malvern, Pennsylvania.  Defendant CertainTeed owns and/or operates a plant that manufactures polymers in Westlake, Calcasieu Parish, Louisiana ("the Lake Charles Polymer Plant").

6.     Defendant CertainTeed is a person and supplier of water, as defined in the SDWA, 42 U.S.C. § 300f (5) & (12), and 40 C.F.R. § 141.2.

7.     At all times relevant to this Complaint, Defendant owned and/or operated the CertainTeed Water System at the Lake Charles Polymer Plant, which was/is a "public water system" and a "non-community water system" as defined in  the SDWA, 42 U.S.C. § 300f(4) & (16), and 40 C.F.R. §141.2.

**THE SAFE DRINKING WATER ACT, THE GROUND WATER RULE, THE COLIFORM RULE, AND TITLE 51, AND PART XII OF THE LOUISIANA ADMINISTRATIVE CODE**

**Safe Drinking Water Act**

8.     The SDWA requires that owners and operators of public water systems test their water supply for specified contaminants, treat the water as needed, provide regular reports and other notices to their users, and take corrective measures to cure deficiencies.  Each of these steps is essential to ensuring that drinking water is safe.

2

9.     Under the SDWA national primary drinking water regulations apply to all public water systems, unless exempted under the Act.  42 U.S.C. § 300g.

10.     The SDWA also requires EPA to promulgate national primary drinking water regulations requiring disinfection as a treatment technique for all public water systems, including surface water systems and, as necessary, ground water systems.  42 U.S.C. § 300g-1(b)(8).

11.     The SDWA defines the term "public water system" as "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." 42 U.S.C. § 300f (4).

12.     The SDWA defines the term "community water system" as "a public water system that—(A) serves at least 15 service connections used by year-round residents of the area served by the system; or (B) regularly serves at least 25 year-round residents."  42 U.S.C. § 300f(15).

13.     The SDWA defines the term "non-community water system" as "a public water system that is not a community water system." 42 U.S.C. § 300f (16).

14.     The SDWA defines the term "supplier of water" as "any person who owns or operates a public water system." 42 U.S.C. § 300f (5).

15.     The SDWA authorizes the Administrator to commence a civil action seeking injunctive relief and/or civil penalties for violations of the Act, and its implementing regulations, 42 U.S.C. § 300g-3(b), or for violations of an administrative order issued under the Act, 42 U.S.C. § 300g-3(g).

16.     The SDWA, 42 U.S.C. § 300g-3(a), as modified by the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19 (Table 2), authorizes the Administrator of EPA to

issue an order or commence a civil action if on the basis of available information the

Administrator finds that a public water supply system has not complied with applicable

requirements. In a civil action commenced by the United States, the statutory maximum penalty

is $37,500 for each day of violations occurring between January 12, 2009 and November 2,

2015, and $54,789 for each day of violation occurring after November 2, 2015 and assessed on

or after January 15, 2017. *See* 83 Fed. Reg. 13826 (April 2, 2018).

17. The SDWA also authorizes the Administrator to issue an order to require

compliance with any applicable SDWA requirements, including the Ground Water Rule.

42 U.S.C. § 300g-3(g).

**Federal Ground Water Rule Requirements, 40 C.F.R. §§ 141.400-141.405**

18. Under the SDWA, the Administrator promulgated the Ground Water Rule to

protect against microbial pathogens in public water systems that use ground water sources. *See*

42 U.S.C. § 300g-1(b)(8) & 40 C.F.R. Part 141.

19. The Ground Water Rule requires public water systems to comply with sanitary

survey information requirements, microbial source water monitoring requirements, treatment

technique requirements, reporting and recordkeeping requirements, and information requests.

*See* 40 C.F.R. §§ 141.400- 141.405.

20. The term "public water system" is defined in 40 C.F.R. § 141.2 as "a system for

the provision to the public of water for human consumption through pipes or . . . other

constructed conveyances, if such system has at least fifteen service connections or regularly

serves an average of at least twenty-five individuals daily at least 60 days out of the year."

21. The term "non-transient non-community water system" is defined in 40 C.F.R.

§ 141.2 as "a public water system that is not a community water system and that regularly serves

4

at least 25 of the same persons over 6 months per year."

     22.    The term "sanitary survey" is defined in 40 C.F.R. § 141.2 as "an onsite review of the water source, facilities, equipment, operation and maintenance of a public water system for the purpose of evaluating the adequacy of such source, facilities, equipment, operation and maintenance for producing and distributing safe drinking water."

     23.    Pursuant to 40 C.F.R. § 141.401(c), a sanitary survey must evaluate the source of water supply, pumps and pumping facilities, treatment, distribution systems, finished water storage, monitoring, reporting and data verification, system management and operation, and operator compliance with State requirements.

     24.    Pursuant to 40 C.F.R. § 141.403(a)(5), if a significant deficiency is identified as a result of a sanitary survey, the ground water system must take corrective action within 120 days (or earlier if the State directs) of receiving the State's written notification of a significant deficiency.

     25.    Pursuant to 40 C.F.R. § 141.404(a), a ground water system with a significant deficiency is in violation of the treatment technique requirement if within 120 days (or earlier if directed by the State) of receiving written notice from the State of the significant deficiency, the system does not complete corrective action in accordance with any applicable State plan review processes or other State guidance and direction, including State specified interim actions and measures, or is not in compliance with a State-approved corrective action plan and schedule.

     26.    The Louisiana Department of Health ("LDH") administers the Public Water Supply Supervision Program in Louisiana.  Louisiana Administrative Code Title 51, Part XII, § 1201 provides for the Ground Water Rule, which LDH promulgated under the authority of La. R.S. 40:4(A)(8) and La. R.S. 40:5(A)(6).

27.     The SDWA authorizes States to request approval from EPA to have primary enforcement responsibility for public water systems. 42 U.S.C. § 300g-2. In May 2017, LDH obtained primary enforcement responsibility for the Ground Water Rule.

28.     Prior to LDH obtaining primary authority, LDH referred the Defendant's non-compliance with the SDWA to EPA for enforcement, and EPA issued two orders to Defendant relating to its Westlake, Louisiana facility.

29.     Under the SDWA the Administrator has authority to issue an order requiring a public water system located in a State that did not have primary enforcement responsibility to comply with any applicable requirements, 42 U.S.C. §§ 300g-3(a)(2) & 300g-3(g), or to commence a civil action for violations of any applicable requirements, 42 U.S.C. § 300g-3(b). Further, in a State with primacy, the Administrator may also issue an order, or commence a civil action after providing appropriate notice to the State. 42 U.S.C. § 300g-3(a). EPA has provided LDH with the required notice and has coordinated with LDH during EPA's enforcement process in this case.

**The Federal Total Coliform Rule**

30.     40 C.F.R. § 141.21 (the "Total Coliform Rule") requires all public water systems to collect total coliform samples at sites which are representative of water throughout the distribution system according to a written sampling plan reviewed by the applicable State agency. The monitoring frequency of samples depends on the population served, and for Defendant's system at its Westlake facility, the frequency was quarterly.

**Title 51, Part XII of the Louisiana Administrative Code**

31.     Title 51, Part XII of the Louisiana Administrative Code provides drinking water protection for the people of the State to prevent adverse public health effects that can occur from

waterborne disease outbreaks or chemical exposure associated with contaminated drinking water. *See generally* La. R. S. 36:258(B).

32.     Title 51, Part XII of the Louisiana Administrative Code requires public water systems to comply with permitting requirements, water quality standard requirements, microbial water monitoring requirements, treatment requirements, operating requirements, reporting requirements, and public notification requirements. *See* Louisiana Administrative Code Title 51, Part XII, §§ 101, 103-107, 109, 301-377, 901-913, 1101-1129, 1301-1315, 1501-1507, 1131, 1133-1137, 1317-1319, 1139-1141, 1509, 1701-1703, 1901-1911.

33.     Title 51, Part XII of the Louisiana Administrative Code also provides the process whereby a non-compliant system achieves full compliance with the requirements of the Code and any applicable laws and regulations relative to public water systems providing safe drinking water. *See* Louisiana Administrative Code Title 51, Part XII, §§ 501-509, 701-709.

## GENERAL ALLEGATIONS

34.     As a corporation, Defendant CertainTeed fits within the definition of a "person" under the SDWA, 42 U.S.C. § 300f (12), and 40 C.F.R. § 141.2.

35.     During the relevant time period Defendant owned and/or operated the CertainTeed Water System located at the Lake Charles Polymer Plant, with an address of 3300 Pete Manena Road, Westlake, Louisiana 70669.

36.     The CertainTeed Water System is both a "public water system" and a "non-transient, non-community water system" under the SDWA, 42 U.S.C. § 300f (4) & (16), and 40 C.F.R. § 141.2, because it regularly serves at least 25 of the same persons over 6 months per year. The CertainTeed Water System serves approximately 43 people with 4 service connections.

37.     As the owner and/or operator of the CertainTeed Water System, Defendant is a "supplier of water" as defined by Section 1401(5) of the Act, 42 U.S.C. § 300f (5), and the SDWA Regulations at 40 C.F.R. § 141.2.

38.     During the relevant time period, Defendant's public water system was subject to Part B of the SDWA, 42 U.S.C. § 300g *et seq.*, and the requirements of the Ground Water Rule in 40 C.F.R. §§ 141.400-141.405, and the Total Coliform Rule in 40 C.F.R. § 141.21(a).

39.     Pursuant to 40 C.F.R. § 141.401, on December 12, 2012, LDH conducted a sanitary survey inspection of the CertainTeed Water System to evaluate the source of water supply, pumps and pumping facilities, treatment, distribution systems, laboratory facilities, and management and operator qualifications.  LDH noted the following significant deficiencies during that inspection:

   a.   failure to have a total coliform monitoring plan;

   b.   failure to have a duly certified operator;

   c.   failure to measure and record daily chlorine residual measurements;

   d.   failure to properly vent wells #2 north and #3 south;

   e.   failure to provide a readily accessible faucet or tap on the well discharge line for collection of water samples at wells #2 north and #3 south; and

   f.   failure to obtain a permit from the state officer to use wells #2 north and #3 south for potable water use in a public water system.

40.     As stated on page two of LDH's February 25, 2013 letter notifying Defendant of the findings from the December 12, 2012 Sanitary Survey Inspection (the "February 25, 2013 LDH Notice Letter"), the Louisiana Department of Natural Resources ("LDNR") classified wells #2 north and #3 south as industrial wells (*i.e.* non-potable), and Defendants never asked the State

of Louisiana to evaluate these wells for potable use.

41.     In the February 25, 2013 LDH Notice Letter, LDH notified Defendant of the above-mentioned significant deficiencies and required Defendant to correct these deficiencies, and provide written notification to LDH of the completed corrective actions within sixty days of receipt of the letter.

42.     In violation of  40 C.F.R. § 141.404(a), Defendant did not complete corrective action in accordance with any applicable State plan review process or other State guidance, including State-specified interim actions, nor did Defendant comply with a State-approved corrective action plan and schedule.

43.     On June 5, 2013, EPA notified Defendant that it was in noncompliance with 40 C.F.R. §141.403 for failing to correct the significant deficiencies identified in the February 25, 2013 LDH Notice Letter.  In its June 5, 2013 letter EPA also informed Defendant that under 40 C.F.R. § 141.404(d) Defendant must notify the system's users of its SDWA violations, and EPA attached copies of a template of the required notice, along with a "certification form" that EPA asked Defendant to return once the notice was provided.  Defendant did not respond to this letter.

44.     Not having received a response from Defendant to its June 5, 2013 notice letter, on May 2, 2014 EPA issued an Administrative Order ("AO"), Docket Number SDWA-06-2014-1321, ordering Defendant to correct the significant deficiencies identified in the February 25, 2013 LDH Notice Letter, specifically:

    a.   complete and submit a total coliform monitoring plan;

    b.   hire a duly certified operator;

    c.   measure and record daily chlorine residual measurements;

    d.   install an approved smooth-nosed sampling tap on the storage tank;

    e.   properly vent wells #2 north and #3 south with a casing vent; and

    f.   install a readily accessible faucet or tap on the well discharge line for collection of

        water samples at wells #2 north and #3 south.

    45.    In the AO, EPA also ordered Defendant to provide within thirty days a written response documenting the completed corrective actions. The effective date of the AO was May 22, 2014. EPA received no response within the thirty day period, nor did Defendant communicate to EPA for more than a year thereafter.

    46.    With neither EPA nor LDH having received a response from Defendant to numerous letters notifying it of SDWA violations, on June 9, 2015, the agencies jointly conducted an unannounced inspection of the CertainTeed Water System.

    47.    Several of Defendant's representatives met with EPA and LDH at the entrance and exit meetings during the inspection, including the manager who Defendant had designated as the contact person for SDWA compliance issues, and to whom EPA and LDH had addressed their correspondence. During the entrance conference the designated manager acknowledged having received EPA's May 2, 2014 AO, and also acknowledged that he had not responded to it.

    48.    During the June 9, 2015 inspection, the EPA and LDH inspectors observed that the significant deficiencies identified in the February 25, 2013 LDH Notice Letter had not been addressed.

    49.    During the June 9, 2015 inspection, the EPA and LDH inspectors also observed that non-potable/industrial wells #2 north and #3 south (part of the plant's Fire Protection System) were still being used as the potable/public water supply for the plant, and that the pipes for these wells did not have adequately placed taps necessary to sample and test the water for

compliance with drinking water standards.

50.     On September 17, 2015, EPA sent Defendant a copy of the inspection report and asked Defendant to take all actions necessary to address the identified areas of concern.

51.     Having received no response to the September 17, 2015 letter and inspection report, or to several emails and voicemail messages, on December 8, 2015, EPA again sent a letter requesting a response to the May 2, 2014 EPA AO and the inspection report.

52.     Almost three years after LDH sent its February 25, 2013 Notice Letter relating to the deficiencies observed during LDH's December 12, 2012 Sanitary Survey Defendant finally responded in writing.  On December 22, 2015, Defendant sent EPA a letter stating that it would attempt to rehabilitate well #1 (the only potable well at the facility, which had been damaged and inoperable since Hurricane Rita in 2005), would conduct a study in January 2016 regarding the feasibility of rehabilitation, and would cease using wells #2 north and #3 south when Well #1 was in use again.

53.     In response to Defendant's letter, EPA requested that a construction schedule be submitted to incorporate into an AO.  Defendant provided a construction schedule on February 11, 2016.

54.     On March 31, 2016, EPA issued a second AO, Docket Number SDWA-06-2016-1204, which incorporated the exact construction schedule submitted by Defendant on February 11, 2016.  The deadline for completing the work and commencing use of the new well was October 22, 2016.  The second AO also ordered Defendant to submit monthly progress reports within ten days after the end of each month.

55.     Defendant violated the March 31, 2016 AO because it did not meet the construction schedule contained therein, and on numerous occasions failed to timely submit the

11

required monthly status reports.

56.     By June 26, 2016, Defendant had retained a certified operator, in accordance with Louisiana law, and by December 16, 2016, Defendant began using a new drinking water supply well that had been tested and permitted in accordance with applicable Louisiana law. Subsequent to December 16, 2016, Defendant came into compliance with the remaining SDWA regulations and the requirements in Title 51, Chapter XII, of the Louisiana Code that EPA and LDH had previously identified as being out of compliance.

## FIRST CLAIM FOR RELIEF

### (Failure to Obtain a State Permit to Operate Industrial Wells #2 and #3 as Public Water Supply Systems)

57.     Paragraphs 1 through 56 are re-alleged and incorporated herein.

58.     Under Louisiana law no public water supply shall be constructed, operated or modified without, and except in accordance with a permit from the state health officer.  LAC 51:XII.105A.

59.     Under 40 C.F.R. § 141.403(a)(4), after a ground water-based public water system receives notice from a State of a significant deficiency (such as the failure or malfunction of a drinking water source, treatment, storage or distribution system) that may have the potential to cause the introduction of contamination into the system, the public water system must consult with the State within 30 days of receiving the written notice.

60.     Under 40 C.F.R. §§ 141.403(a)(5) and 141.404(a), a ground water system that has received notice of a significant deficiency from a State within 120 days of receiving that notice must have either: (i) completed corrective action in accordance with the State's direction or guidance; or (ii) be in compliance with a State-approved corrective action plan.

61.     On or around February 25, 2013, Defendant received notice from LDH of the

significant deficiency that it was operating industrial wells #2 north and #3 south as potable

water sources without having obtained a permit to do so from the LDH, and continued to do so

until late 2016, without obtaining or complying with a corrective action plan, in violation of

40 C.F.R. § 141.403(a)(4) and (5), and LAC 51:XII.105A.

62.     Further, EPA ordered Defendant in the May 2, 2014 AO to correct the

"significant deficiencies" identified during LDH's December 12, 2012 Sanitary Survey, and

Defendant did not promptly make those corrections as required by that Order, or EPA's March

31, 2016 AO setting a schedule for completing the necessary work.

63.     As a result of the violations described above, Defendant is subject to civil

penalties in the amounts and during the dates as described in Paragraph 16.

**SECOND CLAIM FOR RELIEF**

**(Failure to Have a Total Coliform Monitoring Plan)**

64.     Paragraphs 1 through 57 are re-alleged and incorporated herein.

65.     Under Louisiana law each public water supply must be monitored for pollutants in

accordance with a written and approved monitoring plan, including a plan to monitor for total

coliform. LAC 51:XII.903A.

66.     Under 40 C.F.R. § 141.403(a)(4), after a ground water-based public water system

receives notice from a State of a significant deficiency (such as the failure to have a written plan

to monitor total coliform), the public water system must consult with the State within 30 days of

receiving such notice.

67.     Under 40 C.F.R. §§ 141.403(a)(5) and 141.404(a), a ground water system that has

received notice of a significant deficiency from a State must within 120 days of receiving that

notice must : (i) complete corrective action in accordance with the State's direction or guidance;

or (ii) be in compliance with a State-approved corrective action plan.

68.     Defendant received notice from LDH on or around February 25, 2013, of the significant deficiency that it was operating industrial wells #2 north and #3 south without a written and approved total coliform monitoring plan, and it continued to do so until mid-2015, without obtaining or complying with a corrective action plan, in violation of 40 C.F.R. § 141.403(a)(4) and (5), and LAC 51:XII.903A.

69.     Further, EPA ordered Defendant in a May 2, 2014 AO to correct the "significant deficiencies" identified during LDH's December 12, 2012 Sanitary Survey, and Defendant did not promptly make those corrections as required by that Order.  As a result of the violations described above, Defendant is subject to civil penalties as set forth in Paragraph 16.

### THIRD CLAIM FOR RELIEF

### (Failure to Sample a Public Water System for Total Coliform Every Quarter)

70.     Paragraphs 1 through 56 are re-alleged and incorporated herein.

71.     Under EPA's Total Coliform Rule, a non-transient, non-community based public water system such as Defendant's system was required to sample its water supply for total coliform quarterly.  40 C.F.R. §141.21(a)(3)(i).

72.     Defendant violated the above-mentioned quarterly total coliform sampling requirement for at least five quarters between September 2012 and December 2014 by failing to properly sample wells #2 and #3.

73.     As a result of the violations described above, Defendant is subject to civil penalties as set forth in Paragraph 16.

## FOURTH CLAIM FOR RELIEF

### (Failure to Take Daily Measurements of, and Keep Records on, Chlorine Residual for a Public Water System)

74.    Paragraphs 1 through 56 are re-alleged and incorporated herein.

75.    Under Louisiana law each public water supply system must on a daily basis measure chlorine residual, and keep records on the measurements.  LAC 51:XII.367A.

76.    Under 40 C.F.R. § 141.403(a)(4), after a ground water-based public water system receives notice from a State of a significant deficiency (such as the failure daily to measure and record residual chlorine in accordance with Louisiana law) the public water system must consult with the State within 30 days of receiving the written notice.

77.    Under 40 C.F.R. §§ 141.403(a)(5) and 141.404(a), a ground water system that has received notice of a significant deficiency from a State must within 120 days of receiving that notice: (i) complete corrective action in accordance with the State's direction or guidance; or (ii) be in compliance with a State-approved corrective action plan.

78.    Defendant received notice from LDH on or around February 25, 2013 of the significant deficiency that it was failing to measure and record chlorine residual levels in its public water supply system (wells #2 north and #3 south) in violation of 40 C.F.R. § 141.403 and LAC 51:XII.367.A.

79.    This violation of the requirement to measure and record chlorine residual continued for a significant period of time following Defendant's receipt of the February 25, 2013 Notice Letter.

80.    Further, EPA ordered Defendant in a May 2, 2014 Administrative Order to correct the "significant deficiencies" identified during LDH's December 12, 2012 Sanitary Survey, and Defendant did not promptly make those corrections as required by EPA's May 2, 2014 AO.

81.     As a result of the violations described above, Defendant is subject to civil penalties as set forth in Paragraph 16.

## FIFTH CLAIM FOR RELIEF

### (Failure to Have a Public Water Supply System under the Supervision and Control of a Duly Certified Operator)

82.     Paragraphs 1 through 56 are re-alleged and incorporated herein.

83.     Under Louisiana law, all public water supply systems must be under the supervision and control of a duly certified operator in accordance with the State Operator Certification Act, Act 538 of 1972, as amended.  LAC 51:XII.309.A.

84.     Under 40 C.F.R. § 141.403(a)(4), after a ground water-based public water system receives notice from a State of a significant deficiency (such as the failure to be under the control and supervision of a duly certified operator in accordance with Louisiana law) the public water system must consult with the State within 30 days of receiving the written notice.

85.     Under 40 C.F.R. §§ 141.403(a) (5) and 141.404(a), a ground water system that has received notice of a significant deficiency from a State must within 120 days of receiving that notice: (i) complete corrective action in accordance with the State's direction or guidance; or (ii) be in compliance with a State-approved corrective action plan.

86.     Defendant received notice from LDH on or around February 25, 2013 of the significant deficiency that it failed to meet the requirement to be under the supervision and control of a duly certified operator in violation of 40 C.F.R. § 141.403 and LAC 51:XII.309.A.

87.     Further, EPA ordered Defendant in a May 2, 2014 AO to correct the "significant deficiencies" identified during LDH's December 12, 2012 Sanitary Survey, and Defendant did not promptly make those corrections as required by that Order.

88.     This violation of the requirement to be under the supervision and control of a duly

16

certified operator continued from an unknown start date that preceded December 12, 2012, until June 2016.

89.     As a result of the violation described above, Defendant is subject to civil penalties as set forth in Paragraph 16.

## SIXTH CLAIM FOR RELIEF

### (Failure to Notify Users of Violations of Ground Water Rule Requirements)

90.     Paragraphs 1 through 56 are re-alleged and incorporated herein by reference.

91.     Under 40 C.F.R. § 141.404(d), when a ground water public water supply system is in violation of treatment technique requirements it must give public notification of these violations in accordance with 40 C.F.R. § 141.203.

92.     On or around February 25, 2013, Defendant received notice of numerous "significant deficiencies" from LDH in a letter summarizing the findings from LDH's "Sanitary Survey" conducted on December 12, 2012.

93.     In a letter dated June 5, 2013, EPA notified Defendant that it had failed timely to correct the "significant deficiencies" identified in LDH's February 25, 2013 letter, and that under 40 C.F.R. § 141.404(d) Defendants must provide public notice of these significant deficiencies in accordance with 40 C.F.R. § 141.203.  EPA attached to its June 5, 2013 letter instructions on how to provide public notice, a sample notice, and a "certification form" to be returned after the public notice had been provided.

94.     Following EPA's June 5, 2013 letter, and continuing through the end of 2016, Defendant failed to provide the required notice.

95.     As a result of the violation described above, Defendant is subject to civil penalties as set forth in Paragraph 16.

17

## SEVENTH CLAIM FOR RELIEF

**(Failure to Properly Vent Ground Water Wells that Serve a Public Water Supply)**

96.     Paragraphs 1 through 56 are re-alleged and incorporated herein.

97.     Under Louisiana law all potable water well vents shall be constructed and installed to prevent the entrance of contamination, including ensuring that all vent openings are piped to be water tight to a point not less than 24 inches above the highest flood level which may have occurred in a 10-year period. LAC 51:XII.327A.12.

98.     Neither well #2 north nor well #3 south which were used as a potable water supply source for many years ending in December 2016, met the requirements of LAC 51:XII.327.A.12.

99.     Under 40 C.F.R. § 141.403(a)(4), after a ground water-based public water system receives notice from a State of a significant deficiency (such as the failure to properly vent wells to prevent contamination of an aquifer), the public water system must consult with the State within 30 days of receiving the written notice.

100.    Under 40 C.F.R. §§ 141.403(a)(5) and 141.404(a), a ground water system that has received notice of a significant deficiency from a State must within 120 days of receiving that notice: (i) complete corrective action in accordance with the State's direction or guidance; or (ii) be in compliance with a State-approved corrective action plan.

101.    Defendant received notice from LDH on or around February 25, 2013 of the significant deficiency that wells #2 north and #3 south were not properly constructed and installed so as to prevent contamination of the aquifer, in violation of 40 C.F.R. § 141.403 and LAC 51:XII.327.A.12.

102.    Further, EPA ordered Defendant in its May 2, 2014 AO to correct the significant

18

deficiencies identified during LDH's December 12, 2012 Sanitary Survey, and Defendant did not promptly make those corrections as required by that Order.

103.    These violations continued from the time Defendant began using Wells #2 north and #3 south as a public water supply until Defendant constructed and began operating a new drinking water well at the Westlake facility in December 2016.

104.    As a result of the violations described above, Defendant is subject to civil penalties in the amounts and during the dates as described in Paragraph 16.

<strong>EIGHTH CLAIM FOR RELIEF</strong>

<strong>(Violation of the Requirement to Have a Readily Accessible Faucet<br>or Tap to Collect Water Samples, on the Drinking Water Lines)</strong>

105.    Paragraphs 1 through 56 are re-alleged and incorporated herein.

106.    Under Louisiana law each potable water supply must have a readily accessible faucet or tap on the well discharge line at the well for the collection of water samples. LAC 51:XII.327.A.15.  Neither well #2 north, nor well #3 south had a faucet or tap in compliance with this requirement when inspected by LDH during the December 12, 2012 Sanitary Survey.

107.    Under 40 C.F.R. § 141.403(a)(4), after a ground water-based public water system receives notice from a State of a significant deficiency (such as the failure to have a readily accessible faucet or tap for collecting water samples) the public water system must consult with the State within 30 days of receiving the written notice.

108.    Under 40 C.F.R. §§ 141.403(a)(5) and 141.404(a), a ground water system that has received notice of a significant deficiency from a State must within 120 days of receiving that notice: (i) complete corrective action in accordance with the State's direction or guidance; or (ii) be in compliance with a State-approved corrective action plan.

109.    Defendant received notice from LDH on or around February 25, 2013 of the

19

significant deficiency that it was operating industrial wells #2 north and #3 south as public water supplies without having readily accessible faucets or taps for taking water samples, and Defendant continued to do so for a substantial period of time thereafter, without obtaining or complying with a corrective action plan, in violation of 40 C.F.R. § 141.403(a)(4) and (5), and LAC 51:XII.327A.15.

110.    Further, EPA ordered Defendant in a May 2, 2014 AO to correct the "significant deficiencies" identified during LDH's December 12, 2012 Sanitary Survey, and Defendant did not promptly make those corrections as required by that Order.

111.    As a result of the violations described above, Defendant is subject to civil penalties in the amounts and during the dates as described in Paragraph 16.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court:

1.    Pursuant to Section 1414 of the Act, 42 U.S.C. § 300g-3, assess appropriate civil penalties against Defendant for the violations identified in this Complaint.

2.    Award such other and further relief as the Court may deem just and proper.

FOR THE UNITED STATES OF AMERICA:

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

LISA A. CHERUP

20

Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C. 20044
(202) 514-2802 (phone)
(202) 616-6584 (fax)
Lisa.Cherup@usdoj.gov

WILLIAM M. MCSWAIN
U.S. Attorney E.D. Pennsylvania
615 Chesnut Street
Suite 1250
Philadelphia, PA  19106

OF COUNSEL:

KRISTINE TALBOT
Assistant Regional Counsel
U.S. EPA Region 6
1445 Ross Avenue
Suite 1200 (Mail Code 6RC)
Dallas, TX  75202-2733
(214) 665-8356 (phone)
Kristine.Talbot@usepa.gov

JS 44 (Rev. 06/17)                              **CIVIL COVER SHEET**                    18-CV-3614

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | CertainTeed Corporation           18  3614 |

| **(b)**  County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant   Chester County |
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
|  | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
| Lisa A. Cherup, Environmental Enforcement Sec., Environment & Natural Resources Div., U.S. Dept. of Justice, PO Box 7611, Washington, D.C. 20044-7611, (202) 514-2802 ph | Brett E. Slensky, CertainTeed Corp./ Saint-Gobain Corp., North America, 20 Moores Road, Malvern, PA  19355  (610) 893-5696 ph |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1   U.S. Government        ☐ 3  Federal Question
       Plaintiff                      *(U.S. Government Not a Party)*

☐ 2   U.S. Government        ☐ 4  Diversity
       Defendant                   *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☒ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☒ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1  Original       ☐ 2 Removed from       ☐ 3  Remanded from       ☐ 4 Reinstated or       ☐ 5 Transferred from       ☐ 6 Multidistrict       ☐ 8 Multidistrict
      Proceeding          State Court              Appellate Court          Reopened              Another District            Litigation -            Litigation -
                                                                                                      *(specify)*               Transfer                Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Safe Drinking Water Act, 42 U.S.C. 300g, et seq.
Brief description of cause:
enforcement action for violations of Safe Drinking Water Act and implementing regulations.

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   DEMAND $ _____   CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE _____   DOCKET NUMBER _____   AUG 23 2018

DATE   08/17/2018          SIGNATURE OF ATTORNEY OF RECORD   Lisa A. Cherup

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

18    3614

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: United States, c/o Lisa A. Cherup, ENRD/EES/USDOJ, P.O. Box 7611 Ben Franklin Station, Washington, D.C.  20044-7611

Address of Defendant: CertainTeed Corp., c/o Brett Slensky, 20 Moores Rd. Malvern, PA  19355

Place of Accident, Incident or Transaction:  facility is in Westlake, LA, but Defendant's HQ is in Malvern, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____ n/a _____   Judge: _____ n/a _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/23/2018 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ PA #47737 _____ *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**    *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    *(Please specify):*    Federal Safe Drinking Water Act

**B.**    *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify): _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I,   Lisa A. Cherup _____, counsel of record *or pro se plaintiff, do hereby certify:*

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 08/23/2018 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ PA #47737 _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

AUG 23 2018

MSG

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

*United States of America*

*CertainTeed Corporation*

CIVIL ACTION

18    3614

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                 ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

_8/23/2018_     _Lisa A. Cherup_          _United States_
**Date**        **Attorney-at-law**       **Attorney for**

_202 514-2802_   _202 616-6584_          _lisa.cherup@usdoj.gov_
**Telephone**    **FAX Number**           **E-Mail Address**

(Civ. 660) 10/02